NANCIE K. POTTER, OSB NO. 80152
E-MAIL: pottn@fosterpdx.com
FOSTER PEPPER TOOZE LLP
Suite 1800
601 SW Second Avenue
Portland, OR 97204-3171
Telephone: (503) 221-0607
Facsimile: (503) 221-1510



      Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MERCHANDISING TECHNOLOGIES, INC., an Oregon corporation, | Case No. CV '05  1195  BR |
|                    Plaintiff, | COMPLAINT FOR UNFAIR COMPETITION AND DECLARATORY AND INJUNCTIVE RELIEF RE PATENTS |
| vs. | |
| TELEFONIX, INC., an Illinois corporation, and VANGUARD PRODUCTS GROUP, a Florida corporation, | |
|             Defendants. | |

Plaintiff MERCHANDISING TECHNOLOGIES, INC. ("MTI"), for its complaint

against defendants TELEFONIX, INC ("TELEFONIX") and VANGUARD PRODUCTS

GROUP ("VANGUARD") alleges as follows:

**JURISDICTION AND VENUE**

1.     This is an action for unfair competition and for declaratory relief that plaintiff MTI is not

Page 1 - COMPLAINT FOR UNFAIR COMPETITION AND
          DECLARATORY AND INJUNCTIVE RELIEF RE
          PATENTS

4755

liable for infringement of U.S. Patent No. 6,799,994 ("the '994 patent") or any other patent

owned by defendants TELEFONIX and VANGUARD. Jurisdiction is proper pursuant to

28 U.S.C. §§ 1331, 1337, 1338 and 2201, and 15 U.S.C. § 15. Venue is proper in this judicial

district under 28 U.S.C. §§ 1391 and 1400(b). This Court has personal jurisdiction over the

defendants TELEFONIX and VANGUARD because they are doing business in this district. The

acts and practices constituting the violations alleged in this complaint occurred within this

judicial district and elsewhere.

## PARTIES

2.     Plaintiff MTI is an Oregon corporation having its principal place of business in Hillsboro,

Oregon.

3.     Defendant TELEFONIX is an Illinois corporation having its principal place of business

in Waukegan, Illinois.

4.     Defendant VANGUARD is a Florida corporation having its principal place of business in

Tampa, Florida.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

5.     MTI builds interactive retail displays for consumer electronics. Part of MTI's business

involves building displays that allow consumers to hold and operate products like digital

cameras, camcorders and cell phones while making purchasing decisions. In the case of a digital

camera or camcorder, the consumer typically lifts the product from the display for the purpose of

comparing the performance of one brand with another. MTI's displays provide this basic

functionality along with enhanced features such as, for example, showing product information on

a screen when the consumer lifts it from the display. MTI's displays include sophisticated

electronic components for accomplishing these functions.

6.     MTI's displays are sold both domestically and internationally. In the United States,

Page 2 - COMPLAINT FOR UNFAIR COMPETITION AND
         DECLARATORY AND INJUNCTIVE RELIEF RE
         PATENTS

MTI's customers are large electronics retailers like Best Buy, Target or Fry's Electronics.

7.      Each product offered for sale is tethered to MTI's displays by a multi-conductor cable. The cable provides both security against theft and the electrical power and signal wires needed to operate the product.  Additional security is provided by an electronic sensor or switch that activates an alarm if the product is disconnected from the tether.

8.      A group of electronic products is typically tethered to an MTI display at the same time. This allows consumers to compare different brands or product models by operating them side-by-side while standing at the display.  Each product has its own tether.  The tethers are designed to play-out line as the consumer lifts the product from the display and automatically retract via a spring-loaded reel mechanism when the consumer returns it to rest on the display.  This reduces or eliminates tangled cables.

9.      MTI has in-house technical staff that designs its displays and a manufacturing facility for assembly and shipment of its products to customers.  MTI purchases certain display components and parts from vendors as part of the manufacturing process, including tether and reel mechanisms.

10.     Various designs of tether and reel mechanisms are available as off the shelf components from different vendors in the industry, including defendants TELEFONIX and VANGUARD. The industry commonly refers to them as "retractors," or sometimes, "security cord reels."

11.     MTI's interactive displays are semi-permanent fixtures when installed in a retail store. Retailers need a display that provides product "swap ability" or, in other words, allows the retailer to easily swap electronic devices due to seasonal changes in models or for other reasons, *e.g.*, a retailer may initially use an MTI display for camcorders and then later decide to substitute digital cameras for the camcorders.

12.     In order to accommodate these changes, MTI designed an electronic switching system that enabled one type of device to be swapped with another on the same retractor cable.  MTI markets its system as the "Freedom" system.

Page 3 - COMPLAINT FOR UNFAIR COMPETITION AND
            DECLARATORY AND INJUNCTIVE RELIEF RE
            PATENTS

13.    MTI's Freedom system includes an electronic circuit board, designed by MTI, which is housed within a plastic puck mounted to the electronic device.  The end of the retractor cable connects to the circuit board via the puck.  The circuit board adjusts voltages and signals received from the retractor cable to make them compatible with the specifications of the electronic device.  When one type of device is switched with another on the same retractor, MTI's system electronically switches and adjusts incoming voltages and signals to the new product, as needed, according to the specifications of that device.  This allows product swapping using the existing wiring in the retractor, and existing wiring harnesses and electronic components already built into the display.  MTI's system makes it particularly easy for retailers to make changes at the display.

14.    The industry knows VANGUARD and TELEFONIX to be related companies. VANGUARD sells TELEFONIX retractors or otherwise functions as a product distribution company for OEM products made by TELEFONIX.  VANGUARD also provides tethered security systems that integrate TELEFONIX products.

15.    Paul C. Burke ("Burke") is a principal of TELEFONIX.  Either Burke or TELEFONIX owns an interest in VANGUARD.  Burke is believed to be in control of both companies.

16.    Up until the present time, MTI exclusively purchased TELEFONIX retractors from either TELEFONIX or VANGUARD.  MTI began using these retractors in MTI displays in or about 2000.  MTI initially purchased retractors directly from TELEFONIX and dealt only with TELEFONIX.  At a later point in time, TELEFONIX informed MTI that VANGUARD would be the exclusive supplier of TELEFONIX parts and refused to sell retractors directly to MTI.  From that point forward, MTI obtained TELEFONIX retractors only through VANGUARD.

17.    TELEFONIX filed a patent application (in 1998) that claimed patent rights on a two-part mechanical mount for holding a camcorder on a display.  The two-part mount had a base that was easy to mount to display counter structure and included the TELEFONIX retractor built into

Page 4 - COMPLAINT FOR UNFAIR COMPETITION AND
        DECLARATORY AND INJUNCTIVE RELIEF RE
        PATENTS

the base.  The second part carried the camcorder and functioned as a handle, or holder, that could easily be lifted from the base, with the camcorder connected to it, thus unwinding the retractor cable at the same time.

18.     TELEFONIX made no claims to the U.S. Patent Office ("USPTO") in its 1998 patent application that suggested that TELEFONIX intended to broadly patent the concept of swapping products on a display, as described above.  TELEFONIX's 1998 patent application did suggest, however, that the two-part mechanical mount would work well in a system where different cameras are swapped with different connection and power requirements.  In this respect, the 1998 application described how to use a conventional pin and socket connector for exchanging one camera with another.

19.     TELEFONIX's patent on the two-part mount issued as U.S. Patent No. 6,386,906 ("the '906 patent") on May 14, 2002, which is the predecessor, or parent, of the '994 patent at issue here.  The USPTO has a practice of allowing "continuations" of patent applications, and even allows multiple patents to issue from the same original patent application, so long as the continuation is filed during the time the patent is technically "pending."  While controversial, continuations allow an inventor to take advantage of the benefit of the parent's filing date.  In this instance, TELEFONIX took advantage of the 1998 filing date of the '906 patent by filing for the '994 patent as a continuation on the last possible date in 2002.

20.     TELEFONIX intentionally and knowingly used its continuation patent application to attempt to claim patent rights that it could assert against MTI's Freedom system, after the fact. During the course of obtaining the '994 patent from 2002 to 2004, TELEFONIX shifted what it was originally claiming for patent rights (a two-part mount ) and commenced to characterize and claim that a conventional pin and socket connector, as originally described in its 1998 patent application, was a unique "modular connector" system that applied against the swapping function provided by MTI's Freedom system.  In essence, TELEFONIX filed a continuation application in 2002, and claimed priority of invention back to 1998, for the purpose of alleging

Page 5 - COMPLAINT FOR UNFAIR COMPETITION AND
              DECLARATORY AND INJUNCTIVE RELIEF RE
              PATENTS

that TELEFONIX's patent rights predate MTI's Freedom system.  These activities led to issuance of the '994 patent on October 2004.

21.    MTI had no knowledge of TELEFONIX's conduct, or the '994 patent, until the early part of 2005.  At that time, TELEFONIX caught MTI by surprise by notifying MTI that it is an infringer of the '994 patent.  TELEFONIX also notified MTI that VANGUARD is TELEFONIX's exclusive licensee under the '994 patent.

22.    During the time period that TELEFONIX was seeking the '994 patent, MTI was also developing MTI's "all in one" security system business for a certain class of retail customers. The "all in one" security system is an MTI concept, was the first of its kind, and is also marketed by MTI as part of its "Freedom" system line of products.

23.    MTI's "all in one" system integrates data, power and signal functions as part of a tethered system that has a security sensor connected to a handheld device like a PDA or cell phone with data capability.  This version of the Freedom system is used at retail locations like cell phone stores ("handheld retailers") who have a lesser need for the larger displays used by those retailers who sell a wider range of electronic products.

24.    Several years ago, and at or about the same time MTI commenced purchasing TELEFONIX retractors, handheld retailers did not represent a significant part of MTI's overall business.  It is believed that VANGUARD was selling security systems to handheld retailers at that time.  Since then, MTI's "all in one" system has become popular with handheld retailers and is developing into a significant market for MTI.

25.    During the years TELEFONIX was seeking the '994 patent, VANGUARD evolved from an MTI supplier into a competitor.  MTI's "all in one" system expanded sales to handheld retailers and caused MTI and VANGUARD to become major competitors for this business. During that time, VANGUARD copied certain design features that originated with MTI. VANGUARD also hired one of MTI's former salespersons and is using that person's contacts to call on MTI's customers.

Page 6 - COMPLAINT FOR UNFAIR COMPETITION AND
        DECLARATORY AND INJUNCTIVE RELIEF RE
        PATENTS

26.     Moreover, in 2002, when VANGUARD was primarily a supplier, a group of companies including VANGUARD, TELEFONIX and MTI were named as defendants in a Chicago patent litigation, *Se-Kure Controls Inc. v. Vanguard Product Group et al.*, Case No. 1:02-cv-03767, U.S. District Court, Northern District of Illinois ("the Se-Kure action"). The Se-Kure action was brought in the early part of 2002 and involves a different patent owned by an unrelated party.

27.     MTI was named as a defendant in the Se-Kure action because of MTI's purchase of TELEFONIX retractors, first from TELEFONIX and then from VANGUARD. As a consequence, during the course of the litigation TELEFONIX and VANGUARD agreed to defend MTI in the Se-Kure action.

28.     TELEFONIX and VANGUARD were defending MTI in the Se-Kure action in Chicago during the same time TELEFONIX was seeking patent rights, unknown to MTI, that it could assert against MTI. Mark Grossman, TELEFONIX and VANGUARD's attorney, advised MTI during that time. He simultaneously handled litigation matters on behalf of MTI, defended MTI depositions, produced confidential attorney-client opinions that involved MTI, and had access to business information that was confidential to MTI. After the '994 patent issued, Grossman indicated that he had a conflict of interest, for the first time, and alleged that MTI is infringing the '994 patent. By this time, the Se-Kure action had been pending in Chicago for about three years and was nearing the close of fact discovery. MTI was forced to terminate its relationship with Grossman and retain new counsel in Chicago at a time that placed MTI at a procedural disadvantage.

29.     TELEFONIX and VANGUARD are also represented by Lee Grossman, who is Mark Grossman's brother. Lee Grossman is also actively involved in the defense of the Se-Kure litigation in Chicago.

30.     Lee Grossman's firm, then known as Grossman & Flight, was primarily responsible for obtaining the '994 patent. Lee Grossman's firm made representations to the USPTO that the "modular connector" was unique and could be claimed as a patentable invention by

Page 7 - COMPLAINT FOR UNFAIR COMPETITION AND
          DECLARATORY AND INJUNCTIVE RELIEF RE
          PATENTS

TELEFONIX. Lee Grossman is now affiliated with his brother, Mark Grossman, as a member of the Grossman Law Offices, which continues to represent TELEFONIX and VANGUARD.

31. The USPTO has an obligation to not unjustly issue patents. As a consequence, the USPTO has promulgated rules, pursuant to statutory authority, for the purpose of requiring individuals to independently disclose information that it needs to carry out effective examination of patent applications and allowance of patents having the proper scope. These rules impose a duty of candor and good faith on all individuals associated with the filing or prosecution of patent applications in the United States.

32. During the course of applying for and obtaining the '994 patent, no information was disclosed to the USPTO by TELEFONIX concerning the state of the art, as it related to "modular connectors." The USPTO issued the '994 patent, having limited information about the state of the art, after TELEFONIX's attorneys made the representation: "None of the cited references discloses or suggests the use of a first cable assembly having a modular connector and a plurality of conductors…."

33. Under the auspices of alleged patent rights, TELEFONIX and VANGUARD are now either refusing to sell retractors or tying retractor sales to a requirement that MTI purchase "other" parts from TELEFONIX or VANGUARD. MTI has always purchased retractors from TELEFONIX and VANGUARD, and retractors were the only products purchased by MTI from these defendants (with the exception of minor components purchased in insignificant numbers). Now, according to TELEFONIX and VANGUARD, if MTI refuses to purchase these other parts, or otherwise refuses to negotiate a license, MTI is an infringer of the '994 patent.

34. VANGUARD has created the appearance that it is willing to sell the other parts necessary to satisfy TELEFONIX and VANGUARD's alleged patent infringement claims. However, these parts are not off the shelf parts that VANGUARD is in a position to supply. They are custom designed by MTI for MTI's products. Even if TELEFONIX or VANGUARD could make them, they would need MTI's proprietary engineering drawings and related specifications.

Page 8 - COMPLAINT FOR UNFAIR COMPETITION AND
       DECLARATORY AND INJUNCTIVE RELIEF RE
       PATENTS

VANGUARD has, in fact, requested this information from MTI knowing full well that it is more valuable to VANGUARD as a competitor of MTI rather than a supplier.

35.    TELEFONIX and VANGUARD are using the '994 patent to specifically target MTI's sales of "Freedom" systems.  By refusing to sell additional retractors to MTI in the name of alleged patent rights, VANGUARD is knowingly interfering with existing MTI customer contracts for the purpose of taking business away from MTI.

36.    The '994 patent was obtained by TELEFONIX through knowing, willful, and intentional fraud on the USPTO, and was obtained for the purpose of harming competition.  TELEFONIX intentionally and willfully defrauded the USPTO by withholding material information from the USPTO in connection with obtaining the '994 patent.  But for these fraudulent actions the USPTO would not have issued the patent.

37.    TELEFONIX and VANGUARD manipulated patent rights and have attempted to obtain broad patent rights on a sophisticated system developed by MTI based on an earlier patent application that describes a connector design that was already known at the time the application was filed.

38.    TELEFONIX and VANGUARD also manipulated patent rights with the intent of asserting them against MTI while, at the same time, TELEFONIX and VANGUARD were allegedly defending MTI in Chicago.

39.    TELEFONIX and VANGUARD are now using the '994 patent and other patent rights to disrupt the interactive display market in the United States and are attempting to restrain competition in and/or monopolize this market.

40.    TELEFONIX and VANGUARD are continuing to manipulate patent rights by filing other continuations from the original 1998 patent application in an attempt to patent competitor developments, after the fact.  In addition to the '906 and '994 patents referenced above, additional patents known to have been obtained by TELEFONIX via misuse of the continuation process are:  U.S. Patent Nos. 6,896,543; 6,799,994; and 6,761,579.

Page 9 - COMPLAINT FOR UNFAIR COMPETITION AND
           DECLARATORY AND INJUNCTIVE RELIEF RE
           PATENTS

41.     TELEFONIX and VANGUARD are also presently seeking patent rights in the USPTO by making overly broad claims of invention rights that, if allowed by the USPTO, will provide these defendants with presumptively valid patent rights that nevertheless cover ideas and concepts that are old and known.  Pending patent application US2003/019760 (publication number) is an example.

42.     Finally, TELEFONIX and VANGUARD have forced MTI to seek retractors from other sources by either refusing to deal with MTI or by agreeing to supply retractors only if MTI provides valuable competitive information to VANGUARD.  The dimensions and operational features of the TELEFONIX retractor have not changed substantially and have been incorporated as a component part into MTI's displays for years.  While no party has broad patent rights on the concept of a retractor, TELEFONIX is believed to own certain patents specific to TELEFONIX retractors, including U.S. Patent Nos. 6,578,683; 6,495,756; and 6,019,304.  To the extent that these patents are inapplicable to MTI so long as MTI purchases TELEFONIX retractors, MTI is being forced to incur design expenses associated with locating a different supply source for retractors that can match MTI's dimensional and operational specifications while, at the same time, avoiding TELEFONIX's other patent rights.

## FIRST CLAIM FOR RELIEF
## (VIOLATION OF 15 U.S.C. § 1)

43.     Plaintiff MTI refers to and incorporates the preceding paragraphs by reference as though set forth in full.

44.     Defendants have entered into and/or have agreed to enter into a combination and/or conspiracy to unreasonably restrain trade by conspiring and agreeing to obtain one or more patents through knowing and willful fraud on the USPTO.  This conspiracy and/or agreement to restrain trade affects the market relating to the manufacture and sale of interactive displays.

Page 10 - COMPLAINT FOR UNFAIR COMPETITION
            AND DECLARATORY AND INJUNCTIVE
            RELIEF RE PATENTS

45.    Defendants' restraint of trade has had a substantially harmful effect on plaintiff and its business, and as to the competition in the manufacture and sale of interactive displays. This restraint was imposed on goods in the flow of interstate commerce and affects interstate commerce in the United States.

46.    Defendants' restraint of trade has harmfully affected competition in the United States, and its harmful effects outweigh any beneficial effects on competition. The wrongful acts of defendants and others in contract, combination and conspiracy with defendants unreasonably restrained trade in the relevant markets and were done with the purpose and intent to control prices and/or to unlawfully monopolize trade and commerce in the relevant markets in violation of 15 U.S.C. § 1.

47.    By reason of defendants' unlawful conduct and as a direct and proximate result of this conduct, plaintiff has potentially lost sales, profits, and value of its businesses. Plaintiff has suffered, and will continue to suffer, irreparable harm through loss of its trade and business, and the public will be damaged by (1) the weakening or elimination of plaintiff and others in the interactive display market; and (2) the weakening or elimination of independent sources and suppliers of interactive displays.

## SECOND CLAIM FOR RELIEF

### (ATTEMPTED MONOPOLIZATION - VIOLATION OF 15 U.S.C. § 2)

48.    Plaintiff MTI refers to and incorporates the preceding paragraphs by reference as though set forth in full.

49.    Defendants' acts demonstrate that defendants had the specific intent to control prices or destroy competition in the interactive display market in the United States and also represent predatory and anticompetitive conduct in violation of 15 U.S.C. § 2. Defendants possess a dangerous probability of achieving monopoly power in the interactive display market. Defendants' acts have occurred in or affected interstate commerce. Finally, as a direct and

Page 11 - COMPLAINT FOR UNFAIR COMPETITION
        AND DECLARATORY AND INJUNCTIVE
        RELIEF RE PATENTS

proximate result of defendants' conduct, MTI has suffered injuries and damages in its business.

## THIRD CLAIM FOR RELIEF

### (CONSPIRACY TO MONOPOLIZE - VIOLATION OF 15 U.S.C. § 2)

50.     Plaintiff MTI refers to and incorporates the preceding paragraphs by reference as though set forth in full.

51.     The facts described show that defendants knowingly have entered into an agreement or mutual understanding to obtain and/or maintain monopoly power in the interactive display market in the United States.  The defendants specifically intended that the parties to the agreement or mutual understanding would obtain or maintain monopoly power in this market in violation of 15 U.S.C. § 2.  Defendants' acts represent an overt act in furtherance of the agreement or mutual understanding and have occurred in or affected interstate commerce.  As a direct and proximate cause of defendants' acts, MTI has suffered injury and/or damage to its business.

## FOURTH CLAIM FOR RELIEF

### (DECLARATORY RELIEF – NONINFRINGEMENT OF '994 PATENT)

52.     Plaintiff MTI refers to and incorporates the preceding paragraphs as though set forth in full.

53.     Plaintiff does not infringe any claim of the '994 patent or any other patent alleged to be infringed by defendants.

54.     An actual controversy has arisen and now exists between plaintiff and defendants concerning at least the '994 patent as it relates to plaintiff's interactive displays.  As a result, plaintiff brings this claim for relief to determine noninfringement and/or patent invalidity as applied to plaintiff.

Page 12 - COMPLAINT FOR UNFAIR COMPETITION
            AND DECLARATORY AND INJUNCTIVE
            RELIEF RE PATENTS

30102955.01

55.    Plaintiff has been overtly threatened and has a reasonable apprehension that it will be sued for infringement of at least the '994 patent. In addition to directly claiming that plaintiff infringes the '994 patent, defendants have also commenced suit against at least one other competitor alleging infringement of the same patent.

56.    Pursuant to 28 U.S.C. § 2201, Plaintiff desires a judicial determination of the applicability of the '994 patent, and other patents owned by defendants, to plaintiff's activities.

## FIFTH CLAIM FOR RELIEF

### (FOR INVALIDATION AND UNENFORCEABILITY OF '994 PATENT)

57.    Plaintiff MTI refers to and incorporates the preceding paragraphs as though set forth in full.

58.    The '994 patent is invalid because any inventions claimed in the patent would have been anticipated by or obvious to one skilled in the art at the time the inventions were made.

59.    Alternatively, if the scope of any claim of the patent in suit is interpreted broadly and in a manner such that MTI could be found in violation of the patent, then the scope of such patent claim is invalid or unenforceable for failure to comply with the provisions of 35 U.S.C. §§ 101, 102, 103, or 112.

60.    The '994 patent is unenforceable because TELEFONIX failed in its duty of candor and good faith in dealing with the USPTO and did not disclose to the USPTO all information known to TELEFONIX that would have been material to the patentability of the '994 patent.

WHEREFORE, plaintiff prays for judgment against defendants, and each of them, as follows:

61.    For an order that defendants have violated unfair competition and antitrust laws under Sections 1 and 2 of the Sherman Act;

Page 13 - COMPLAINT FOR UNFAIR COMPETITION
          AND DECLARATORY AND INJUNCTIVE
          RELIEF RE PATENTS

62.     For damages according to proof at trial, and that defendants pay plaintiff treble damages, attorneys' fees, and all costs of suit incurred by plaintiff;

63.     For a judicial determination that MTI does not infringe U.S. Patent No. 6,799,994 or any other patent owned by defendants;

64.     For an order invalidating U.S. Patent No. 6,799,994; and

65.     For such other and further relief as the Court deems just and proper.

DATED August 1, 2005.

FOSTER PEPPER TOOZE LLP

By:  _Nancie K. Potter_____

NANCIE K. POTTER, OSB No. 80152
Attorneys for Plaintiff