IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MERCHANDISING TECHNOLOGIES,          05-CV-1195-BR
INC., an Oregon corporation,

       Plaintiff,              OPINION AND ORDER

v.

TELEFONIX, INC., an Illinois
corporation, and VANGUARD
PRODUCTS GROUP, a Florida
corporation,

       Defendants.


**PAUL B. GEORGE**
**NANCIE K. POTTER**
Foster Pepper Tooze LLP
601 S.W. Second Avenue, Suite 1800
Portland, Or  97204-3171
(503) 221-7750

**PETER R. JARVIS**
**DAVID J. ELKANICH**
Hinshaw & Culbertson, LLP
1000 S.W. Broadway, Suite 1950
Portland, OR 97205-3078
(503) 243-3243


1 - OPINION AND ORDER

**BRUCE A. KASER**
Vantage Law PLLC
355 N.W. Gilman Boulevard, Suite 203
Issaquah, WA  98027
(425) 391-8741

       Attorneys for Plaintiff

**JEREMY D. SACKS**
Stoel Rives LLP
900 S.W. Fifth Avenue, Suite 2600
Portland, OR  97204
(503) 294-9649

**JOHN P. STRIDE**
**DAVID S. AMAN**
**ROBYN R. AOYAGI**
Tonkon Torp LLP
888 S.W. Fifth Avenue
Suite 1600
Portland, OR 97204-2099
(503) 802-2053

       Attorneys for Defendants


**BROWN, Judge.**

    This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (#37).  For the reasons that follow, the Court **GRANTS** Defendant's Motion to Dismiss.


<u>BACKGROUND</u>

    The facts are undisputed unless otherwise noted.

**I.   General Background**

    Plaintiff Merchandising Technologies, Inc. (MTI) builds

2 - OPINION AND ORDER

interactive retail displays for hand-held consumer electronic devices.  Plaintiff's display units include freestanding bases with retractable electric cables (retractors) extending from the bases that supply power and antitheft security to electronic products fastened to the ends of the retractors.  Plaintiff refers to the base and the retractor together as the "unibase system."

Defendant Telefonix, Inc., manufactures retractors. Plaintiff began purchasing retractors for its unibase system from Telefonix in 2000.  Shortly thereafter, Telefonix informed Plaintiff that Defendant Vanguard Products Group would be the exclusive distributor for Telefonix products and that Plaintiff would have to buy the Telefonix retractors from Vanguard. According to Plaintiff, it purchased Telefonix retractors from Vanguard from early 2000 through late February 2005.  Defendants, however, allege Plaintiff continued to purchase these retractors from Vanguard until at least August 2005.

## II.  Patent Background

In 1998 Telefonix sought a patent for one design of a unibase system.  Plaintiff alleges the 1998 patent application covered only "the pin and socket connector method of swapability"[1] and did not purport to cover the more advanced

---

[1] The parties describe the ability to change the types or models of hand-held electronic devices attached to the retractor as "swapability."

"puck" design developed by Plaintiff.

In early 2000, Plaintiff developed and began to sell an advanced unibase system with a broader swapability feature that uses an electronics board housed within a separate component (the puck).  The puck allows the retailer to change products attached to the retractor in an easier and more controlled manner.  The record does not reflect whether Plaintiff applied for or received a patent for its new system.

On May 14, 2002, the Patent Trade Office (PTO) issued to Telefonix Patent No. 6,386,906 ('906 Patent) based on its original design.  On that same day, Telefonix "continued" the '906 Patent application and amended the wording by relabeling the connector as a "modular connector."  Plaintiff contends Telefonix's amended wording was intended to claim a broader right that would cover any kind of swapable feature, including one like Plaintiff had developed.  On October 5, 2004, the PTO issued Patent No. 6,799,994 ('994 Patent) to Telefonix with the amended wording.

## PROCEDURAL BACKGROUND

On August 1, 2005, Plaintiff filed an action in this Court alleging Defendants violated the Sherman Act, 15 U.S.C. §§ 1 and 2; seeking a declaration that Plaintiff was not infringing the '994 Patent; and seeking a declaration that the '994 Patent is

4 - OPINION AND ORDER

invalid.

On September 19, 2005, Plaintiff filed a First Amended Complaint again alleging Defendants violated §§ 1 and 2 of the Sherman Act; seeking a declaration that Plaintiff was not infringing any claim of the '994 Patent; seeking a declaration that the '994 Patent is invalid; and adding claims for false marking in violation of 35 U.S.C. § 292, prosecution laches with respect to the '994 Patent, and violation of Oregon Revised Statutes § 646.608.

On October 31, 2005, Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint.  On December 20, 2005, the Court issued an Order denying the Motion to Dismiss as moot based on communications from the parties' counsel.

On December 30, 2005, Plaintiff filed a Second Amended Complaint in which it alleged claims against Defendants for monopolization through fraud in procuring the '994 Patent in violation of § 2 of the Sherman Act, tying in violation of § 2 of the Sherman Act, and damages and injunctive relief pursuant to § 26 of the Sherman Act.  In the alternative, Plaintiff sought a declaration that it is not infringing the '994 Patent and that the '994 Patent is invalid and unenforceable.  Plaintiff also brought claims against Defendants for false marking in violation of 35 U.S.C. § 292; prosecution laches with respect to the '994 Patent; unfair competition in violation of the Lanham Act,

5 - OPINION AND ORDER

15 U.S.C. § 1125(a); and violation of Oregon Revised Statutes § 646.608.

On February 10, 2006, Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint on the grounds that (1) the Court lacks subject-matter jurisdiction over Plaintiff's declaratory-judgment patent claims because there is no actual controversy; (2) Plaintiff fails to state a claim for violations of the Sherman Act; (3) Plaintiff fails to state a claim for violations of the Lanham Act; and (4) Oregon Revised Statutes § 646.608 is not applicable to this matter and, in any event, is preempted by federal patent law.

In their Memorandum in Support of their Motion to Dismiss, Defendants moved in the alternative to transfer this matter to the United States District Court for the Northern District of Illinois on the ground that Defendants are litigating the '994 Patent in that forum and many of the issues in this matter, such as claims interpretation, infringement, and validity, are also at issue in the Northern District of Illinois case.

On November 22, 2006, the Court heard oral argument on Defendants' Motion.  At the conclusion of the hearing, the Court requested supplemental briefing on the issue of subject-matter jurisdiction, which the parties submitted on December 1, 2006. On that same day, the parties filed a Joint Submission in which (1) Defendants withdrew their Motion to Dismiss with respect to

Plaintiff's false-marking claim and their alternative request to transfer this matter to the Northern District of Illinois and (2) Plaintiff voluntarily dismissed its claims for tying in violation of § 2 of the Sherman Act, unfair competition in violation of the Lanham Act, and violation of Oregon Revised Statutes § 646.608.


## STANDARDS

### I.    Motion to Dismiss for Lack of Subject-Matter Jurisdiction

When deciding a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court may consider affidavits and other evidence supporting or attacking the complaint's jurisdictional allegations. *Autery v. U.S.*, 424 F.3d 944, 956 (9th Cir. 2005). The court may permit discovery to determine whether it has jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). The court has broad discretion in granting discovery and may narrowly define the limits of such discovery. *Id.*

Plaintiff has the burden to establish that the court has subject-matter jurisdiction. *Ass'n of American Med. Coll. v. United States*, 217 F.3d 770 (9th Cir. 2000).

### II.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Dismissal under Rule 12(b)(6) "for failure to state a claim

is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)(quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). A court must limit its review to the contents of the complaint, take all allegations of material fact as true, and view the facts in the light most favorable to the nonmoving party. *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1998).

A court should not dismiss a complaint, thus depriving the plaintiff of an opportunity to establish his or her claims at trial, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). If a court dismisses a claim pursuant to Rule 12(b)(6), the court should grant leave to amend unless the court determines the allegation of other facts consistent with the operative pleading could not possibly cure the deficiency. *Schreiber Distrib. Co. v. Serv-Well Furn. Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). *See also Reddy v. Litton Indus.*, 912 F.2d 291 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991).

## **DISCUSSION**

After oral argument was heard and the parties filed a Joint

Submission, Defendants only move to dismiss Plaintiff's declaratory-judgment patent claims on the ground that the Court lacks subject-matter jurisdiction and Plaintiff's claim of monopolization under § 2 of the Sherman Act on the ground that Plaintiff fails to state a claim.

## I.    Plaintiff's Declaratory-Judgment Patent Claims

In its Second Amended Complaint, Plaintiff requests, among other things, a declaration that Plaintiff has not infringed the '994 Patent and that the '994 Patent is invalid or unenforceable. Plaintiff also brings a claim for prosecution laches with respect to the '994 Patent.  Defendant moves to dismiss these claims on the ground that the Court lacks subject-matter jurisdiction because Plaintiff has failed to show an actual controversy existed at the time Plaintiff filed its Complaint as required by the Declaratory Judgments Act, 28 U.S.C. § 2201.

### A.    Standards

The Declaratory Judgment Act provides:  "In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).  The purpose of a declaratory-judgment action is to allow a party "who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal

9 - OPINION AND ORDER

action by the other side." *BP Chem. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993).

The Act parallels Article III of the United States Constitution, which "requires an actual controversy between the parties before a federal court may exercise jurisdiction over an action for a declaratory judgment." *EMC Corp. v. Norand Corp*,. 89 F.3d 807, 810 (Fed. Cir. 1996).  Whether there is an "actual controversy" generally depends on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. (citation omitted). "'[W]hen there is no actual controversy, the court has no discretion to decide the case.'" *Teva Pharm. USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324, 1332 (Fed. Cir. 2005)(quoting *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 634 (Fed. Cir. 1991)).

"Federal Circuit law governs . . . whether an actual controversy exists under the Declaratory Judgment Act when the underlying merits of an action involve patent infringement and/or validity." *Microchip Tech., Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936, 940 (Fed. Cir. 2006)(citing *Medimmune, Inc. v. Centocor, Inc.*, 409 F.3d 1376, 1378 (Fed. Cir. 2005)).  The Federal Circuit has developed a two-part inquiry to determine whether there is an actual controversy in actions in which a

party seeks a declaration regarding patent infringement or the
invalidity of a patent. *Teva*, 395 F.3d at 1332. For an actual
controversy to exist, there must be:

> (1) an explicit threat or other action by the
> patentee which creates a reasonable
> apprehension on the part of the declaratory
> judgment plaintiff that it will face an
> infringement suit; and (2) present activity
> by the declaratory judgment plaintiff which
> would constitute infringement, or concrete
> steps taken with the intent to conduct such
> activity.

*Id.* at 1332 (citing *Gen-Prove, Inc. v. Vysis, Inc.*, 359 F.3d
1376, 1380 (Fed. Cir. 2004)).

The test is objective and "focuses on whether [the
defendant's] conduct rose to a level sufficient to indicate an
intent to enforce its patent." *Shell Oil Co. v. Amoco Corp.*,
970 F.2d 885, 888 (Fed. Cir. 1992)(citation omitted). The court
"must look for any express charges of infringement, and if none,
then to the totality of the circumstances." *Id.* An actual
controversy, however, must exist at the time the complaint is
filed. "Later events may not create jurisdiction where none
existed at the time of filing." *GAF Bldg. Materials Corp. v. Elk
Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996). *See also
Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731,
734 n.2 (Fed. Cir. 1988)("The presence or absence of jurisdiction
must be determined on the facts existing at the time the
complaint under consideration was filed.").

11 - OPINION AND ORDER

"The plaintiff has the burden of establishing by a preponderance of the evidence, *inter alia*, that it has a reasonable apprehension that it will be sued." *Shell Oil*, 970 F.2d at 888.

### B.    Analysis

Plaintiff contends it had a reasonable apprehension at the time of filing this action that Defendants would imminently file a patent-infringement action against it.  Plaintiff relies on (1) a February 25, 2005, letter from Chris Kelsch, Vanguard's Chief Executive Officer (CEO), to Mike Cook, Plaintiff's CEO; (2) an April 2005 telephone conversation between Cook and Kelsch; (3) a July 9, 2005, email from Kelsch to Cook; and (4) the fact that Defendants filed a patent-infringement action relating to the '994 Patent against a competitor.

In their Motion to Dismiss, Defendants contend none of Plaintiff's allegations create a sufficient basis for an objectively reasonable apprehension that Defendant would imminently file a patent-infringement action against Plaintiff.

Although the parties rely on several cases, the Court finds the analysis in the following cases to be the most helpful and persuasive generally in determining whether Plaintiff had a reasonable apprehension at the time of filing this action that Defendants would imminently file a patent-infringement action against it:  *Shell Oil Co. v. Amoco Corp.; Teva Pharmaceuticals*

*U.S.A., Inc. v. Pfizer, Inc.*; and *Phillips Plastics Corp. v. Kato Hatsujous.*

In *Shell Oil*, the plaintiff initiated a meeting between its patent attorneys and the defendant's patent attorney.  At the meeting, the plaintiff's attorney stated the plaintiff would begin manufacturing a product that it did not believe infringed the defendant's patent, but the plaintiff wanted to reach an agreement to resolve "any potential uncertainty."  970 F.2d at 886.  The plaintiff's counsel left the defendant's counsel with some information about the new product and a proposed royalty agreement.  *Id*.  The parties exchanged several offers and counteroffers that included a statement by the defendant's counsel indicating the defendant understood from the meeting that the plaintiff's product "*falling within the [defendant's] patent* would be used in one plant in Europe." *Id*. (emphasis in original).  The parties' attorneys also had numerous telephone conversations in which the defendant's counsel allegedly stated the plaintiff's product would infringe the defendant's product even if it met certain planned specifications.  *Id*.  Counsel met again in May 1990, and the defendant refused to accept the plaintiff's offers.  *Id*.  In December 1990, the defendant sent the plaintiff a letter "regarding [the plaintiff's] operations under [the defendant's] patent" and stated:  "[A]lthough [the plaintiff] disagrees that [the defendant's] patent covers [the

plaintiff's] operations, it recognizes that the claims of such patent may be read to do so." *Id.* at 887.  At the end of a final meeting between the parties, the plaintiff's counsel inquired of defendant's representative:  "I assume you will enforce your patent?"  The defendant's representative answered, "Yes."  *Id.* The plaintiff filed a declaratory-judgment action after the final meeting and alleged the above interactions created a reasonable apprehension that the defendant would imminently bring an infringement action against the plaintiff.

        The Federal Circuit, however, held these interactions were not sufficient.  *Id.* at 889.  The court found the defendant's written and oral statements were not "express charge[s] of infringement." *Id.* at 888.  Even under the totality of the circumstances, the court found the defendant's statements did not give rise to a reasonable apprehension that the plaintiff would imminently be sued.  *Id.* at 889.  The court concluded the defendant's statements that the plaintiff's activities "'fall within,' are 'covered by,' and are 'operations under' [the defendant's] patent fall short of alleging infringement." *Id.*

        In *Phillips*, the defendant informed the plaintiff in 1987 that certain of its fasteners were "covered by" the defendant's patent and invited the plaintiff to take a license under the patent.  57 F.3d 1051, 1052 (Fed. Cir. 1995).  The plaintiff declined the offer on the ground that it believed the

defendant's patent was invalid.  In 1992 the PTO reissued the patent, and the defendant once again wrote to the plaintiff and offered a license agreement.  *Id*.  In September 1992, the defendant wrote the plaintiff a letter in which it requested various sales and pricing information in order to "put together a reasonable offer of a licensing proposal." *Id*.  The plaintiff did not respond to the defendant's request and filed an action for declaratory judgment of invalidity and/or noninfringement of the reissued patent.  The defendant filed a motion to dismiss for lack of subject-matter jurisdiction.  *Id*. at 1052-53.  The Federal Circuit held the plaintiff did not have an objectively reasonable apprehension of an imminent action against it at the time it filed the action.  Even though the defendant notified the plaintiff that the defendant believed the fasteners infringed the defendant's patent, the court concluded neither this nor "a patentee's attempt to conduct license negotiations" created a justiciable controversy.  *Id*. at 1053-54.

Finally, in *Teva Pharmaceuticals,* the plaintiff, a generic drug manufacturer, filed an application in 2002 for FDA approval of a generic version of Zoloft.  395 F.3d at 1326.  New drug application (NDA) holders are required to notify the FDA of all patents that "claim[] the drug for which the [NDA] applicant submitted the application . . . and with respect to which a claim of patent infringement would reasonably be asserted," and the

FDA, in turn, lists the identified patents in "the Orange Book."
*See* 21 U.S.C. § 355(b)(1),(c))(2).  In its 2002 application, the
plaintiff identified Pfizer's '699 Patent for Zoloft and asserted
its NDA did not infringe Pfizer's '699 Patent or, alternatively,
that Pfizer's patent was invalid.  *Id*.  Pfizer did not bring a
patent-infringement action against the plaintiff within the time
prescribed by the FDA statute.  After the statutory period
lapsed, the plaintiff filed a declaratory-judgment action against
Pfizer seeking a declaration that the plaintiff's drug did not
infringe Pfizer's '699 Patent or that the '699 Patent was
invalid.  *Id*.  The plaintiff alleged it had a reasonable
apprehension that Pfizer would imminently file a patent-
infringement action against the plaintiff because Pfizer had
listed the '699 Patent in the Orange Book, had asserted its
rights in the '699 Patent against at least one other generic drug
manufacturer, and had asserted its patent rights against alleged
infringers of other patents.  The Federal Circuit dismissed the
plaintiff's action on the ground that the plaintiff had not shown
an objectively reasonable apprehension that a lawsuit by Pfizer
was imminent.  *Id*. at 1334.  The Federal Circuit held neither the
fact that Pfizer included the '699 Patent in the Orange Book as a
patent to which "claims of infringement *could* be reasonably
asserted" nor that Pfizer had a history of defending its patents
was sufficient to establish that the plaintiff "had a reasonable

16 - OPINION AND ORDER

apprehension of *imminent* suit." *Id.* at 1333 (emphasis in original).

### 1.    February 25, 2005, Letter

On February 25, 2005, Kelsch sent a letter to Cook stating in pertinent part:

> This letter is to inform you that on October 5, 2004, Telefonix was awarded U.S. Patent No. 6,799,994 on its retail security system that combined security and power. Vanguard has entered into an agreement as the exclusive licensee of the '994 Patent.
>
> While we consider Plaintiff to be a valued customer of Vanguard, at this time we have valuable intellectual property rights that we must protect.  To that end, although Vanguard has sold Plaintiff products in the past, we want to be clear that there is no license under the '994 Patent for Plaintiff to produce and or sell items covered by the '994 Patent or any related patent.

Defendants contend the February 25, 2005, letter is a standard notice-of-patent letter and that much more is required to establish that Plaintiff had a reasonable apprehension of an imminent lawsuit.  The Court agrees.

Kelsch did not assert in the letter that he believes Plaintiff's product infringes Telefonix's patent and did not threaten litigation.  Thus, Kelsch's statements in the February 25, 2005, letter are the kinds of statements that the Federal Circuit found insufficient to form the basis of a reasonable apprehension of imminent litigation in *Shell, Teva,* and *Phillips.*

17 - OPINION AND ORDER

### 2.    April 2005 Telephone Call

In his Declaration, Cook states he contacted Kelsch after receiving the February 25, 2005, letter, and Kelsch told Cook that "Telefonix believed Plaintiff's product violated the '994 Patent because Plaintiff did not have a license agreement."  Although Cook's account of Kelsch's statement may show Plaintiff's state of mind at the time it filed the Complaint, it provides only a weak basis to assert there was any reasonable apprehension by Plaintiff that Defendants would imminently file a patent-infringement action against Plaintiff because Kelsch's alleged statement was never reduced to any concrete form.

In any event, the Court notes Kelsch's statement was a response to an inquiry by Plaintiff rather than a statement initiating contact with Plaintiff.  In addition, the statement does not contain any suggestion that ether Vanguard or Telefonix intended to bring a patent-infringement action against Plaintiff in the near future.  Thus, the Court concludes Kelsch's alleged statement is, like the statements in *Shell* and *Phillips,* insufficient to support any a reasonable apprehension that an infringement action against Plaintiff was imminent.

### 3.    July 9, 2005, Email

Plaintiff also relies on a July 9, 2005, email to Cook in which Kelsch states in pertinent part:

18 - OPINION AND ORDER

Our bottom line has not changed - Vanguard is
not interested in selling only part of the
items that are covered by the patent.  All
covered items must be purchased through
Vanguard.

While I understand your urgent need for
equipment, this does not resolve the open
issues.  MTI should not be manufacturing
and/or selling items covered by our patent
unless purchased or licensed through
Vanguard.

These issues have been on the table for
almost 5 months, I even requested (in
writing) your drawings and specifications in
mid May.

Vanguard is committed to protecting the IP
that we have invested so much time, energy
and money into.

Although this message suggests Vanguard might

attempt to work out a licensing agreement and also mentions the

patent at issue, it does not threaten or suggest any litigation,

much less imminent action by either Vanguard or Telefonix.

Again, Kelsch did not initiate this exchange, but made these

assertions in response to an email from Cook in which he inquired

about "feedback from Telefonix."  In any event, Vanguard is

entitled to refuse Plaintiff the right to use all or part of any

items covered by its patent.  *See Richardson v. Suzuki Motor Co.,

Ltd.,* 868 F.2d 1226, 1246 (Fed. Cir. 1989)("[I]t is contrary to

the laws of property, of which the patent law partakes, to deny

the patentee's right to exclude others from use of his

property")(citing 35 U.S.C. § 261).  In fact, Vanguard's

19 - OPINION AND ORDER

statement that it is "not interested in selling only part of the
items" that it believes are covered by the '994 Patent is merely
a statement of Vanguard's preference within its rights as a
patent licensee.  Thus, Vanguard's email message falls below the
level of threat the Federal Circuit found necessary to create a
reasonable apprehension of an imminent lawsuit in *Shell*, *Teva*,
and *Phillips*.

      **4.    Defendants' Other Patent-Infringement Litigation**

      Bruce A. Kaser testified in his Declaration that
he learned "a few weeks or a month before" April 14, 2005, "that
[Defendants] had filed a patent infringement case against" a
competitor in the United States District Court for the Northern
District of Illinois involving the '994 Patent.  Plaintiff
contends its knowledge of this other action filed by Defendants
against a competitor for allegedly infringing the '994 Patent
created a reasonable apprehension that Defendants also would
bring an action against Plaintiff for patent infringement.

      Defendants' involvement in other litigation may
demonstrate a willingness by Defendants to enforce their patent
rights and is a factor to be considered when determining whether
Plaintiff had an objectively reasonable apprehension of an
imminent infringement action.  As the Federal Circuit concluded
in *Teva*, however, a history of defending patents by itself is not
a sufficient basis to create an objectively reasonable

20 - OPINION AND ORDER

apprehension of an imminent lawsuit. *Teva*, 395 F.3d at 1333.

     **5.   Totality of the Circumstances**

       Although the individual acts of a defendant may
not be sufficient on their own to create a reasonable
apprehension when there are not any express charges of
infringement, the Court must consider "the totality of the
circumstances" to determine whether there is an actual
controversy. *Shell Oil*, 970 F.2d at 888.  Courts consider a
number of factors when determining whether the totality of the
circumstances creates a reasonable apprehension, including:
(1) whether allegations of infringement come from outside counsel
rather than from the patentee's executives or in-house counsel,
(2) whether the patentee warned customers of the plaintiff about
potential infringement, (3) whether the patentee has enforced the
same patent against other companies in prior litigation, and
(4) whether the patentee gave the plaintiff an unfairly short
time to respond to infringement allegations before taking action.
*See, e.g., Fina Research, S.A. v. Bariod Ltd.*, 141 F.3d 1479
(Fed. Cir. 1998); *Arrowhead Indus. Water, Inc. v. Ecolochem,
Inc.*, 846 F.2d 731 (Fed. Cir. 1998); *Kos Pharm., Inc. v. Barr
Labs., Inc.*, 242 F. Supp. 2d 311 (S.D.N.Y. 2003); *Cargill, Inc.
v. Sears Petroleum & Trans. Corp.*, Civ. No. 02-1396(DC), 2002 WL
31426308 (S.D.N.Y. Oct. 28, 2002); *Consac Indus., Inc. v.
Nutramax Labs., Inc.*, No. 97 CV 1155(SJ), 1998 WL 229255

(E.D.N.Y. Mar. 31, 1998).

In *Fina Research*, the defendant's attorney sent the plaintiff two letters in which the attorney noted that he represented the defendant in intellectual property matters and advised the plaintiff that the defendant considered the plaintiff's product "to be an infringement of one or both of the subject patents.  [The defendant] . . . intends to vigorously protect and enforce its rights in the subject patents, including the filing of suit if necessary."  141 F.3d at 1482.  The attorney also warned "[the Plaintiff] is actively inducing the infringement of one or both of the subject patents. . . .  [The plaintiff] should be aware that [the defendant] has every intention of protecting its rights under these patents."  *Id*. The Federal Circuit concluded the fact (1) that an attorney representing the defendant in intellectual property matters had sent these letters and (2) that those letters contained specific allegations of infringement and threatened legal action without any countervailing reassuring message was sufficient to create a reasonable apprehension that the defendant would bring a patent-infringement action against the plaintiff.  *Id*. at 1438.

In *Arrowhead*, the defendant's attorney sent the plaintiff a letter enclosing a copy of the patent at issue, noted the defendant had "reason to believe that [the plaintiff] is contemplating or has initiated the practice of the patented

process," demanded confirmation within 20 days that the plaintiff
had discontinued the process, and warned that the defendant had
"in the past not hesitated to protect its patent rights whenever
appropriate."  846 F.2d at 733.  In addition, the defendant's
president sent a letter to one of the plaintiff's customers in
which he advised "[the plaintiff] is not licensed to use our
process and we would therefore consider any use a direct patent
infringement."  *Id.*  Finally, in an infringement action filed by
the defendant against a third party involving the same patent,
the defendant proposed the following finding to the court:  "[The
plaintiff has] practiced . . . a process that infringes the
[defendant's] patent in suit."  *Id*. at 734.  The Federal Circuit
concluded the fact that the defendant (1) gave the plaintiff a
short time to discontinue its practice, (2) warned one of the
plaintiff's customers that it would be infringing the defendant's
patent if it used the plaintiff's product, and (3) requested the
court in an action against a third party to find the plaintiff
had infringed the defendant's patent was sufficient to create a
reasonable apprehension by the plaintiff that the defendant would
imminently file a patent-infringement action against the
plaintiff.  *Id*. at 737-38.

          In contrast, in *Shoom, Inc. v. Electronic
Imagining Systems of America, Inc.*, the CEO of the defendant, a
company in the business of producing electronic invoices and

23 - OPINION AND ORDER

tearsheets for newspapers, sent a letter to 250 newspapers
(including 30 of the plaintiff's customers) in which he informed
the newspapers of the defendant's patent, noted it "may concern"
electronic tearsheets and invoices, and noted the defendant
intended to license its rights under the patent.  No. C05-03434
MJJ, 2006 WL 1529983, at *1 (N.D. Cal. June 1, 2006).  In
response to the defendant's email, several of the plaintiff's
customers expressed concern that the defendant's patent applied
to the plaintiff's technology.  *Id*.  The plaintiff alleged the
defendant's CEO informed the plaintiff that the defendant's
patent "covered the creation of any electronic invoice for a
newspaper."  *Id*.  The plaintiff emailed the defendant's CEO for
further information about the scope of the defendant's patent.
The defendant's CEO responded he could not advise the plaintiff
legally because he was not an attorney, but his "intentions are
to work with you if at all possible so that we can better serve
our clients and each other."  *Id*., at *2.  The plaintiff also
contended the defendant's CEO stated that "[t]he patent applies
to everyone who creates electronic invoices for newspapers, you
are going to pay," "[y]ou can pay me now or pay me later," and
"[w]e will let the lawyers handle it."  *Id*., at *3.  At some
point, the parties engaged in discussions regarding licensing,
but they disputed whether this happened before or after the
plaintiff filed a declaratory-judgment action.  *Id.*

24 – OPINION AND ORDER

The court concluded the initial letter constituted only a licensing offer and did not create an actual controversy. *Id.*, at *5. The court also concluded the communication of the defendant's CEO that the plaintiff's activities "fall within the patent" and "may concern" the patent were not sufficient to create reasonable apprehension of an imminent lawsuit. The court noted the communications came from the defendant's CEO rather than from the defendant's counsel and that the communications "avoid[ed] language that require[d] urgent action." *Id.* Finally, the court concluded the alleged statements made by the defendant's CEO did not constitute a direct threat of litigation and, in light of the totality of the circumstances, did not give rise to a reasonable apprehension that the defendant would imminently file a patent-infringement action against the plaintiff. *Id.*, at *7. Accordingly, the court granted the defendant's motion to dismiss for lack of subject-matter jurisdiction.

Here the communications that Plaintiffs rely on to support their contention that they had a reasonable apprehension that Defendants would imminently file a patent-infringement action also came from officers of Defendants rather than from Defendants' attorneys. In addition, Plaintiff initiated two of the three communications, and the communications did not set a short time frame for negotiations. In fact, the communications

apparently were part of ongoing negotiations between the parties.
For example, in response to the July 9, 2005, email from Kelsch,
Cook stated:

>This is obviously disappointing news.  I
>think it is important for us to meet ASAP in
>Chicago . . . and include Paul Burke in our
>meeting.  I understand you have the license,
>but our relationship and use of the retractor
>was established through Telefonix.
>Additionally, given that Paul is a major
>shareholder in your company . . . his
>involvement in a "moving forward" plan
>between our two companies is important.  I
>can do either August 11th or 16th.  Please
>let me know if one of these dates will work
>for the two of you.

Cook's reference to a "moving forward" plan and a relationship
between the parties establishes that the parties were still in
the midst of negotiations as to the patent rights at the time
Kelsch wrote the February 25, 2005, letter; spoke to Cook on the
telephone; and wrote the July 9, 2005, email.  Thus, these
factors weigh in favor of a finding that Plaintiff did not have a
reasonable apprehension at the time it filed this action that
Defendant would imminently file a patent-infringement lawsuit
against it.

   After filing its Reply, Plaintiff produced a
letter from Craig Blevins, a Vanguard employee, to Wal-Mart.  In
the letter, Blevins notes Vanguard is "currently defending our
'Intellectual Property' against four of our competitors, one of
which you are currently partnered with and a second that you are

26 - OPINION AND ORDER

in negotiations with."  It is doubtful that the mention of an
action against another party as to infringement of Defendants'
patent is sufficient to create a reasonable apprehension of an
imminent infringement action against Plaintiff, but, in any
event, the letter was not received by Wal-Mart until October 16,
2006, which is more than a year after Plaintiff filed this
action.  Thus, the Wal-Mart letter cannot serve as grounds for
any reasonable apprehension by Plaintiff at the time of filing
this action.

     In summary, based on the totality of the
circumstances as reflected in this record (in particular, the
fact that the ongoing communications were between the parties
rather than their attorneys, the absence of a short time frame
and/or demands by Defendants, and the continued discussions
between the parties about a "moving forward" plan), the Court
finds Plaintiff has not established a basis for an objectively
reasonable apprehension at the time of filing this action that
Defendants would imminently file a patent-infringement action
against Plaintiff.  Thus, Plaintiff has failed to show that an
actual controversy existed at the time Plaintiff filed this
action.

     Accordingly, the Court lacks subject-matter juris-
diction over Plaintiff's declaratory-judgment patent claims and
grants Defendants' Motion to Dismiss as to these claims.

27 - OPINION AND ORDER

**II.  Plaintiff's Claim of Monopolization in Violation of § 2 of the Sherman Act**

Plaintiff alleges Defendants violated 15 U.S.C. § 2 by willfully maintaining monopoly power in the market through anticompetitive behavior.  Plaintiff seeks damages under § 2 and an injunction under § 26 of the Sherman Act.

Pursuant to Rule 12(b)(6), Defendants move to dismiss Plaintiff's claim of monopolization and request for injunctive relief on the ground that Plaintiff fails to state a claim.

**A.  Elements of a Claim for Monopolization under § 2**

In general, "behavior conforming to the patent laws orientated towards procuring or enforcing a patent enjoys immunity from the antitrust laws." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1356 (Fed. Cir. 2004), *rev'd on other grounds,* 126 S. Ct. 980 (2003)(citing *Simpson v. Union Oil Co.*, 377 U.S. 13, 24 (1964)).  *See also Q-Pharma, Inc. v. Andrew Jergens, Co.*, 360 F.3d 1295, 1304-05 (Fed. Cir. 2004; *Glass Equip. Designers v. Bester, Inc.*, 174 F.3d 1337, 1343 (Fed. Cir. 1999).  If a patentee obtains a patent by defrauding the PTO, however, it is stripped of its immunity, and "the remainder of the antitrust inquiry must proceed under the law of the regional circuit." *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174 (1965).

To plead a sufficient antitrust claim under 15 U.S.C.

28 - OPINION AND ORDER

§ 2 on the ground of fraud in procuring a patent, the plaintiff must allege:

> (1)  the patentee attempted to enforce the patent;
> (2)  the patent issued because the patentee defrauded the Patent and Trademark Office;
> (3)  the patentee's attempted enforcement threatened to lessen competition in a relevant antitrust market;
> (4)  the plaintiff suffered antitrust damages; and
> (5)  all other elements of attempted monopolization are met.

*Walker Process*, 382 U.S. at 178.  Courts often refer to these claims as "Walker Process claims."  *See Unitherm Food Sys.*, 375 F.3d at 1355; *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998).

When determining a § 2 claim, the law of the Federal Circuit applies to the first two elements, and the remainder of the antitrust inquiry proceeds under the law of the regional circuit.  *Unitherm Food Sys.*, 375 F.3d at 1357.

**B.    Analysis**

Defendants contend Plaintiff has not sufficiently pled the first element of a monopolization claim:  *i.e.,* that Defendants attempted to enforce their patent.

In is Second Amended Complaint, Plaintiff alleges:

> The United States market for interactive retail displays for hand-held consumer electronic devices is a valid anti-trust market.
>
> By virtue of the ['906] Patent and the ['994] Patent, Telefonix possesses monopoly power in that market.

> Telefonix willfully acquired and has willfully maintained monopoly power in the market by engaging in anticompetitive conduct.  In particular, Telefonix's fraudulent procurement of the ['994] Patent have [*sic*] permitted Telefonix/Vanguard to willfully and wrongfully acquire and maintain monopoly power in the relevant market. Telefonix has enforced or attempted to enforce its fraudulently obtained patent.
>
> Defendants' wrongful conduct has occurred in and continues to affect interstate commerce.
>
> MTI has suffered injuries and damages in its business.

Thus, Plaintiff's § 2 claim is a Walker Process claim; *i.e.*, a claim that Defendants gained monopoly power in the market through the '994 Patent, which Plaintiff alleges Defendant obtained through fraud on the PTO.

The Federal Circuit has held, however, that

> The standards for determining jurisdiction in a declaratory judgment action of patent invalidity do not change when the declaration raises a Walker Process claim [under § 2 of the Sherman Act].  A person not under reasonable apprehension of suit cannot overcome the absence of declaratory standing simply by challenging the patent prosecution and asserting fraud.  There is neither statutory nor precedential authority for collateral attack on patent examination procedures, by a person who does not meet the requirements of declaratory judgment standing.

*Medimmune, Inc. v. Genetech, Inc.*, 427 F.3d 958, 968 (Fed. Cir. 2005), *rev'd on other grounds, MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764 (2007)(citing *Unitherm Food*, 375 F.3d at

30 - OPINION AND ORDER

1357-58).  The minimum degree of "enforcement" necessary to satisfy the first element of a claim for monopolization under § 2 is the same as that necessary to establish that an actual controversy exists for purposes of determining whether a court has subject-matter jurisdiction over an action for declaratory judgment regarding patent claims.  As the Federal Circuit explained in *Unitherm Food*:

> It is enough to simply point out that the same facts that compel the conclusion that the plaintiff failed to establish declaratory judgment jurisdiction . . . also compel the conclusion that no reasonable fact finder could find that the defendant has acted to enforce its patent. . . .  In other words, if the patentee has done nothing but obtain a patent in a manner that the plaintiff believes is fraudulent, the court lacks jurisdiction to entertain either a Declaratory Judgment Action or a Walker Process claim.

375 F.3d at 1358 (quotation omitted).  A plaintiff, therefore, may not attack the validity of a patent through a claim under § 2 of the Sherman Act if the plaintiff has not first established the court has subject-matter jurisdiction over a plaintiff's declaratory judgment regarding patent claims.

As noted, the Court concluded Plaintiff has not established federal subject-matter jurisdiction over Plaintiff's declaratory-judgment patent claims.  Thus, pursuant to *Unitherm Food* and *Medimmune*, the Court also concludes Plaintiff has not satisfied the first element required to state a claim for

monopolization in violation of § 2 of the Sherman Act.

Accordingly, the Court grants Defendants' Motion to Dismiss as to Plaintiff's claim for monopolization in violation of § 2 and as to Plaintiff's request for injunctive relief under § 26 of the Sherman Act.  Because it appears there is not any other basis for Plaintiff to pursue these claims, and, thus, no reason for Plaintiff to seek to amend these claims, the Court concludes the dismissal of these claims should be with prejudice.

As already noted, Plaintiff voluntarily dismissed its claims for tying in violation of § 2 of the Sherman Act, unfair competition in violation of the Lanham Act, and violation of Oregon Revised Statutes § 646.608 and Defendants withdrew the part of their Motion to Dismiss against Plaintiff's claim for false marking.  Thus, it appears to the Court that only the false marking claim remains for further proceedings.  The Court will schedule a status conference in due course to set case management dates to resolve the false marking claim.


## CONCLUSION

For these reasons, the Court, **GRANTS** Defendant's Motion to Dismiss (#37) as to Plaintiff's claims for monopolization through fraud in procuring the '994 Patent in violation of § 2 of the Sherman Act, injunctive relief pursuant to § 26 of the Sherman Act, a declaration that it is not infringing the '994 Patent and

32 - OPINION AND ORDER

a declaration that the '994 Patent is invalid and unenforceable

and **DISMISSES** those claims **with prejudice.**

     IT IS SO ORDERED.

     DATED this 7th day of February, 2007.


                        /w/ Anna J. Brown

                        _____
                        ANNA J. BROWN
                        United States District Judge